IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

ROCHELLE WILLIS,

    Plaintiff,

v.                                                              Case No. 2:20-cv-02145-MSN-cgc

EUREKA MULTIFAMILY GROUP, L.P. and
2013 HILLVIEW, LP,

    Defendants.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ORDER DENYING DEFENDANTS' MOTION TO STRIKE AS MOOT**

Before the Court is Defendants' Motion for Summary Judgment, (ECF No. 23), filed on March 31, 2021. Plaintiff filed her response on May 19, 2021. (ECF No. 24.) Defendants filed their reply on June 2, 2021. (ECF No. 25.) For the reasons below, the Court **GRANTS** Defendants' motion for summary judgment. Further, the Court **DENIES AS MOOT** Defendants' Motion to Strike Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment.[1] (ECF No. 26.)

**Background**

This is a premises liability case. Plaintiff Rochelle Willis entered into a lease agreement with Defendants to rent an apartment at the Hillview Village Apartments located at 2114 E Alcy

---

[1] Plaintiff filed her response to Defendants' motion for summary judgment forty-nine (49) days after Defendants filed their motion and twenty-one (21) days after her response was due; thus, her response is untimely. *See* LR 56.1(b) ("A party opposing a motion for summary judgment must file a response within 28 days[.]"). Accordingly, Defendants have moved to strike Plaintiff's untimely response. (ECF No. 26.) Because the Court here rules in Defendants' favor, the Court will **DENY AS MOOT** Defendants' motion to strike Plaintiff's response.

1

Road in Memphis, Tennessee. (ECF No. 24-2 at PageID 421.) Defendant 2013 Hillview, LP owns the property, and Defendant Eureka Multifamily Group, L.P. manages it. (*Id.*)

Around February 1, 2019, Plaintiff reported to property management that the transition strip in the doorway separating her kitchen from her living room was protruding up. (ECF No. 24-2 at PageID 422.) This doorway was the only means of entry and exit into the apartment's kitchen. (ECF No. 25-1 at PageID 463.) A work order was entered that same day. (ECF No. 24-2 at PageID 422.) Before property management could remedy the issue, Plaintiff tripped over the transition strip on February 8, 2019. (*Id.*)

The lease agreement provided that Defendants would "make necessary repairs with reasonable promptness." (ECF No. 24-3 at PageID 429.) Defendants' employee completed the work order concerning the transition strip on February 11, 2019. (*Id.* at PageID 423.) Plaintiff has not reported any further problems with the transition strip since Defendants addressed the issue. (*Id.*)

Plaintiff admits that she was able to walk across the transition strip, albeit with some difficulty, in the intervening ten (10) day period between her reporting the issue and when the issue was resolved. (*Id.* at PageID 422–23.) Plaintiff further admits that her son, who also lived at the apartment, had no issues traversing the transition strip. (*Id.* at PageID 423.)

## **Standard of Review**

Federal Rule of Civil Procedure 56 permits a party to move for summary judgment — and the Court to grant summary judgment — "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the presence or absence of genuine issues of material facts must support its position either by "citing to particular parts of materials in the record," including depositions,

documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586; Fed. R. Civ. P. 56). The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248–49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *see also White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475–76 (6th Cir. 2010). A mere scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374.

The Court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id.* at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252–53.

Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The Court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id.* at 327.

## Analysis

This case is before the Court based on diversity jurisdiction. (ECF No. 1 at PageID 2.) A federal district court sitting in diversity applies the substantive laws of the forum state. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Advanced Disposal Servs. Tenn. Holdings, Inc. v. Lusk Disposal Servs., Inc.*, 478 F. Supp. 3d 716, 721 (E.D. Tenn. 2020). Here, Tennessee law governs this dispute. *See Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992).

In this premises liability action, Plaintiff alleges that Defendants were negligent in their maintenance and supervision of the subject property. (ECF No. 1-2 at PageID 15.) A *prima facie*

claim of negligence consists of the following elements: "1) a duty of care owed by the defendant to the plaintiff; 2) conduct falling below the applicable standard of care amounting to a breach of that duty; 3) an injury or loss; 4) causation in fact; and 5) proximate, or legal, cause." *King v. Anderson Cty.*, 419 S.W. 232, 246 (Tenn. 2013). "[T]he mere fact that an injury has been sustained never raises a presumption of negligence." *Mullins v. Seaboard Coastline Ry. Co.*, 517 S.W.3d 198, 201 (Tenn. Ct. App. 1974) (citations omitted).

The general rule in Tennessee is that "a landlord is not liable to a tenant or a third party for harm caused by a dangerous condition on the leased premises." *Lethcoe v. Holden*, 31 S.W.3d 254, 256 (Tenn. 2000); *Richardson v. H & J Properties, LLC*, No. W2019-02082-COA-R3-CV, 2020 WL 6158463, at *3 (Tenn. Ct. App. Oct. 21, 2020) (citing *Lethcoe*); *Gray v. McDonald's USA, LLC*, 874 F. Supp. 2d 743, 753 (W.D. Tenn. 2012). This rule has been faithfully applied in a variety of scenarios. *See Lethcoe*, 31 S.W.3d at 255–56 (involving a collapsed roof); *Richardson*, 2020 WL 6158463, at *3–*5 (finding in favor of the landlord on a claim involving leaks in a ceiling); *Fisher v. Villages at Henley Station, LLC*, No. M2018-01990-COA-R3-CV, 2020 WL 401856, at *3 (Tenn. Ct. App. Jan. 24, 2020) (finding for the landlord in a case concerning faulty stairs); *Fuller v. Banks*, No. W2015-01001-COA-R3-CV, 2016 WL 409639, at *5–*6 (Tenn. Ct. App. Feb. 3, 2016) (involving a guardrail on a front porch); *Palmer v. Kees*, No. E2014-00239-COA-R3-CV, 2015 WL 3465759, at *3–*4 (Tenn. Ct. App. June 1, 2015) (involving warped and rotting steps). Moreover, this general rule applies to both residential and commercial leases. *See Richardson*, 2020 WL 6158463, at *1 ("While *Lethcoe* involved a commercial tenant and a plaintiff asserting a wrongful death claim, its principles have been applied in cases involving a residential tenant's premises liability claim." (citation omitted)).

5

This general rule, however, has several notable exceptions. *Lethcoe*, 31 S.W.3d at 256. The parties' arguments implicate two such exceptions. The first exception comes into play when: "(1) the dangerous condition was in existence at the time the lease was executed; (2) the landlord knew or should have known of the dangerous condition; and (3) the tenant did not know of the condition and could not have learned about it through the exercise of reasonable care." *Id.* (citing *Maxwell v. Davco Corp. of Tenn.*, 776 S.W.2d 528, 531–32 (Tenn. Ct. App. 1989). As a "natural corollary" to this exception, the landlord will not be held liable when the tenant has "coextensive knowledge" of the dangerous condition. *Id.*

The second exception arises when the landlord has a contractual duty to repair and maintain the leased premises. *See Crow v. Ledoux*, No. E2004-01640-COA-R3-CV, 2005 WL 1160629, at *4 (Tenn. Ct. App. May 17, 2005). Under this exception, "where a landlord has agreed to keep premises in repair and, after notice, neglects to repair, he is liable for one injured by the defective condition." *Ghromley v. Carl B. Cook, Inc.*, 756 S.W.2d 264, 267 (Tenn. Ct. App. 1988); *see also Lethcoe*, 31 S.W.3d at 257 (explaining that an exception to the general rule arises if "the landlord has negligently repaired the premises" regardless of whether a contractual duty exists).

Defendants argue that the general rule of landlord nonliability applies in this case because it is undisputed that Plaintiff had coextensive knowledge of the dangerous condition (*i.e.,* the transition strip). (ECF No. 23-1 at PageID 384.) Plaintiff counters by invoking the exception to the general rule involving negligent repairs. (ECF No. 24-1 at PageID 417–418.)

Here, Plaintiff has failed to negate application of the general rule. *See Richardson*, 2020 WL 6158463, at *5. It is clear to the Court that Plaintiff had coextensive knowledge of the dangerous condition that caused her injury. Indeed, Plaintiff **informed** Defendants of the issue with the transition strip. (ECF No. 24-2 at PageID 422.) Further, she and her son had to traverse

6

the problematic transition strip to enter the apartment's kitchen. (*Id.*) Barring some other exception, the Court will apply *Lethcoe*'s general rule of landlord nonliability.

To evade application of the general rule, Plaintiff argues that the facts at bar trigger another exception to the general rule. Namely, Plaintiff argues that Defendants negligently failed to repair the transition strip. (ECF No. 24-1 at PageID 417.)

As an initial matter, it is inaccurate to say that Defendants "negligently failed to repair" the transition strip because Plaintiff admits that she has had no further issues with the transition strip. (ECF No. 24-2 at PageID 422.) She instead seemingly argues that Defendants did not fix the transition strip in a timely manner. (ECF No. 24-1 at PageID 418.) The cases Plaintiff relies on, however, to support this assertion undercut—rather than support—her cause.

Plaintiff relies on the "particularly instructive case" of *Crow v. Ledoux*, No. E2004-01640-COA-R3-CV, 2005 WL 1160629 (Tenn. Ct. App. May 17, 2005), to support her claim that Defendants did not timely repair the transition strip. (*Id.* at PageID 417.) The landlord in *Crow*, however, refused to address the dangerous condition for over (3) months after receiving notice. *Crow*, 2005 WL 1160629, at *2. Further, *Crow* relies on *Ghormley v. Carl B. Cook, Inc.* for the proposition that a landlord who neglects to make repairs after receiving notice of the dangerous condition is liable. *Id.* at *4. In *Ghormley*, though, the landlord was aware of the dangerous condition for over ten (10) months and did nothing. *Ghormley*, 756 S.W.2d at 266–267. The facts in both *Crow* and *Ghormley* are a far cry from what occurred here where Defendants remedied the issue in just ten (10) days. (ECF No. 24-2 at PageID 423.) Moreover, the timeliness of Defendants' actions is further supported by materials found on the Tennessee Department of Health's website which appear to recommend that tenants wait at least two (2) weeks after giving notice before taking further action. *See If You Rent a Place, Know Your Legal Rights and Duties*,

Tenn. Dep't of Health, https://www.tn.gov/content/dam/tn/health/documents/healthy-places/healthy-homes/HHW_LAS_TN_URLTA_Renters_Rights.pdf at 5 (last visited Aug. 10, 2021); *see also CHS/ Cmty. Health Sys., Inc. v. Med. Univ. Hosp. Auth.*, No. 3:20-cv-00163, 2021 WL 964047, at *6 n.6 (M.D. Tenn. Mar. 15, 2021) (citations omitted) ("The Court is able to take *sua sponte* judicial notice of the contents of a .edu website or a government website[.]").

*Crow* is further distinguishable because a genuine dispute existed over whether the plaintiff had coextensive knowledge of the dangerous condition. *Crow*, 2005 WL 1160629, at *4–*5. That is not the case here where Plaintiff knew of the dangerous condition. Outside of these clearly distinguishable cases, Plaintiff points to no other authority that supports the notion that Defendants were negligent by not repairing the transition strip sooner.

Even more, Plaintiff minimizes the impact of a finding that she had coextensive knowledge of the dangerous condition. For example, in *Richardson v. H & J Properties, LLC*, the Court found in the landlord's favor despite a statutorily imposed duty to repair because the tenant had coextensive knowledge of the dangerous condition. *Richardson*, 2020 WL 6158463, at *4–*5. The tenant in *Richardson* made several reports to property management about water leaks in her ceiling over a span of several months. *Id.* at *1. After notifying the landlord of the latest water leak in her ceiling, the plaintiff later slipped in a puddle caused by the leak. *Id.* The plaintiff argued that the Uniform Residential Landlord and Tenant Act ("URLTA") displaced the general rule of landlord nonliability by imposing a duty on landlords to "[m]ake all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition." *Id.* at *3 (citing Tenn. Code Ann. § 66-28-304(a)(2)). The Court rejected this argument, reasoning that URLTA did not explicitly displace the common-law rule of nonliability for landlords; as such, the general rule of

landlord nonliability still applied in situations where the tenant had coextensive knowledge. *Id.* at *4.

If a statutorily imposed duty to repair was not enough to save the plaintiff's claim in *Richardson,* then so too is the case here. Indeed, as Defendants note, *Richardson* is a "strikingly similar case." (ECF No. 25 at PageID 458.) In both cases, the tenants fell prey to the very same dangerous condition that they disclosed to the landlord. In situations like these, the default rule is that the landlord faces no liability because the tenant had coextensive knowledge. *See Lethcoe*, 31 S.W.3d at 256. Plaintiff has failed to show that an exception applies. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment.

## Conclusion

For the reasons above, the Court **GRANTS** Defendants' Motion for Summary Judgment. (ECF No. 23.) Judgment will be entered in Defendants' favor, and this matter will be **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**, this the 10th day of August, 2021.

                                              *s/ Mark Norris*
                                              MARK S. NORRIS
                                              UNITED STATES DISTRICT JUDGE